(118 App. Div. 711)

WEBB'S ACADEMY AND HOME FOR SHIPBUILDERS v. HIDDEN et al.

(Supreme Court, Appellate Division, First Department. April 5, 1907.)

1. CONTRACTS—ENFORCEMENT—RIGHTS OF THIRD PERSONS.

A stranger to a contract between two persons, to the consideration thereof, and to the obligations imposed thereby, has no right to enforce it.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 790.]

2. DEEDS—CONSTRUCTION.

A grantor and wife conveyed land to a grantee, who on the same day executed a deed to the grantor for life, and on his death to his wife, and provided that, if the wife should not survive the grantor, the premises should pass to a corporation which furnished no part of the consideration. *Held*, that the corporation had no interest in the transaction, except in the event of the wife dying before the grantor, and on her surviving the grantor the title vested in her.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Deeds, §§ 368–371.]

3. TRUSTS—VOLUNTARY TRUSTS—ENFORCEMENT.

A grantor and wife conveyed lands to a grantee, who on the same day executed a deed to the grantor for life, and on his death to his wife, and if she did not survive the grantor the property should pass to a corporation. On the same day the grantor and wife executed a contract stipulating that, if the wife survived the grantor, she would execute necessary instruments to vest the property in the corporation on her death. The contract remained in the possession of the grantor, and subsequently he and his wife abrogated it, and entered into a new agreement binding her to transfer the property to their son. *Held*, that the contract was executory during the grantor's life, and the corporation had no vested right during that time, and, on the grantor and wife abrogating the contract and making a new agreement, the corporation could not enforce the contract on the theory that a trust relation between the wife and the corporation as beneficiary of a trust was established.

Appeal from Judgment on Report of Referee.

Action by the Webb's Academy and Home for Shipbuilders against Thomas R. Hidden, individually and as trustee of the will of Henrietta A. Webb, deceased, and others. From a judgment for plaintiff, defendants appeal. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, HOUGHTON, and LAMBERT, JJ.

Charles F. Brown, for appellants.
John G. Milburn, for respondent.

LAMBERT, J. William H. Webb, in his lifetime and in the year 1889, caused to be established the Webb Academy and Home for Shipbuilders. It was incorporated under the laws of New York, and since its creation has been supported through the generosity of the founder. This corporation is the plaintiff. William E. Webb, defendant, is the only surviving son of William H. Webb, and H. Ada Webb is his wife. On the 26th day of September, 1889, William H. Webb voluntarily gave to the plaintiff, by deeds absolute, subject only to a life estate in himself, certain real estate of the approximate value of $2,000,000, which property passed into plaintiff's possession and full enjoyment upon the death of its benefactor, and has since that time paid an annual income of over $87,000. On the same day Mr. Webb and his wife joined in a deed of the premises involved in this action to one Thomas B. Hidden, and the latter, likewise on the same date, made and delivered a deed of the said premises, the habendum clause of which is as follows:

"To have and to hold all and singular the above-granted premises, together with the appurtenances, and every part and parcel thereof, unto the said William H. Webb and his assigns for and during the natural life of the said William H. Webb, and upon and after his death unto the said Henrietta A. Webb, her heirs and assigns, forever, if she then be living; but, if the said Henrietta A. Webb shall not survive the said William H. Webb, then, upon and after the death of said William H. Webb, unto the said Webb's Academy and Home for Shipbuilders, its successor and assigns, forever, subject as aforesaid."

Mr. Webb and his wife thus joined in conveying to Mr. Hidden property which was owned in fee by Mr. Webb, subject to the dower rights of his wife; and he (Hidden) conveyed a life estate to Mr. Webb, with an absolute fee to Mrs. Webb if she survived her husband, otherwise to the Webb's Academy. The said Webb's Academy is recited as one of the parties of the second part; but it in fact had no relation to the deed, except that, in the event of Mr. Webb surviving his wife, it was to become the owner of the fee. This deed, as well as the one upon which it was based, was recorded. Resulting from this situation, it must be assumed that at this time the Academy had no interest in the transaction, except in the event of Mrs. Webb dying before her husband. It furnished no part of the consideration, and its interest was entirely contingent upon the life of Mrs. Webb, who in fact survived her husband, and thus the record title became vested in her.

Upon the same day, and probably as a part of a general scheme of providing for the Academy, Mr. and Mrs. Webb made and executed a contract, which was delivered to Mr. Webb, in which it was recited that:

"Whereas, the party of the second part [Mr. Webb], now, previous to, and until the conveyance thereof hereinafter mentioned the owner, subject to a mortgage for eighty thousand dollars and interest of the following described premises [referring to the premises in suit]; and whereas, the party of the second part has this day, pursuant to an agreement with the party of the first part, and subject to said mortgage for eighty thousand dollars, conveyed the said premises to Thomas B. Hidden, and has secured the said. Thomas B. Hidden to convey the same as follows, to wit: To the party of the second part for and during his natural life, and upon his death to the party of the first part, her heirs and assigns, if she then be living, but, if the party of the first"

part should not survive the party of the second part, then upon the death of the party of the second part, to Webb's Academy and Home for Shipbuilders," etc.; and "whereas, it is a part of the agreement and the consideration upon which said conveyances have been made that, if the party of the first part shall survive the party of the second part and the title to said premises become vested in her pursuant to said conveyances, she will forthwith perform all acts and execute all instruments which shall be requisite and proper in order to vest in said Webb's Academy and Home for Shipbuilders the fee simple of said premises upon her death and subject to an estate in her for her own life, and also subject to said mortgage for eighty thousand dollars, * * * and otherwise free and clear from any incumbrances thereon, * * * and to that end will either by a proper will duly executed devise the said premises in fee to said Webb's Academy and Home for Shipbuilders, or by a proper deed duly executed and acknowledged convey to said Webb's Academy and Home for Shipbuilders a remainder in fee in said premises, to take effect upon her death: Now, therefore, in consideration of the premises and of the sum of one dollar * * * the party of the first part does, for herself, her heirs, executors, and administrators, covenant and agree to and with the said party of the second part, his heirs, executors, administrators, and assigns, and to and with the said Webb's Academy and Home for Shipbuilders, its successors and assigns, in case that they shall survive the party of the second part and the title to said above-described premises shall become vested in her pursuant to said conveyances, she will forthwith do and perform all acts and things, and execute, acknowledge, and deliver all instruments which shall be requisite and proper in order to vest in said Webb's Academy and Home for Shipbuilders the fee simple to said premises after her death, and subject to an estate in her for and during her natural life, and subject also to said mortgage for eighty thousand dollars, * * * and for that purpose will either by last will and testament, duly executed and containing apt and effectual provisions, devise the said premises to said Webb's Academy and Home for Shipbuilders, its successors and assigns, or by deed duly executed, and containing apt and effectual provisions, convey to said Webb's Academy and Home for Shipbuilders a remainder fee in said premises to take effect upon and after her death."

Mrs. Webb likewise covenanted and agreed, for herself, her heirs, and assigns, with Mr. Webb:

"That the above covenant and agreement is made to and with, and shall inure to the benefit of, the said Webb's Academy and Home for Shipbuilders." etc.

The deeds referred to were duly recorded, and the contract mentioned remained in the possession of Mr. Webb, without any knowledge or privity on the part of the plaintiff, for the period of about 10 years. Before Mrs. Webb came into the possession of the premises under the deeds and contract mentioned, and on the 3d day of October, 1899, Mr. and Mrs. Webb entered into a new agreement, in which the provisions of the previous contract were recited, and by mutual agreement abrogated; and it was then agreed that the property should be transferred to the son of the parties in substantially the same language as was employed in the original contract in providing for its transfer to the plaintiff. William H. Webb died about October 30, 1899. Before her death and the commencement of this action the son William E. Webb conveyed all his right in the premises to his mother, Henrietta A. Webb, and her estate is represented in this action by the defendant Hidden as trustee.

The learned referee before whom this case was tried reached the conclusion, that through and by the deeds and contract of September 26, 1889, an irrevocable trust resulted in behalf of the plaintiff, and

that it was entitled to the premises, as well as the sum of $99,905.11, accrued interests and profits. The defendants have severally appealed from this judgment entered upon the report of the referee.

It was conceded upon the argument, and is manifest, that the plaintiff has no standing in court to sue upon the contract between Mr. and Mrs. Webb; there being no obligation on the part of either of them to the plaintiff. It is a stranger to the contract and its consideration and obligations. Lawrence v. Fox, 20 N. Y. 268, and kindred cases. The judgment must be sustained, if at all, upon the theory that by the instruments of September 26, 1889, Mr. Webb, by a voluntary act unknown to the plaintiff, to which he owed no legal duty, established an irrevocable trust in its favor.

It is not contended that a valid express trust under the statutes of New York was created, but that the conveyance to Henrietta A. Webb, in consideration of and conforming with the covenants on her part contained in the contemporaneous agreement, established a trust relation between the grantee, Henrietta A. Webb, and the plaintiff, as beneficiary of the trust, and the effect of the New York statutes relating to uses and trusts is conceded to be immaterial. The proposition of the learned counsel for the respondent is that William H. Webb, being the absolute owner of the estate, made a complete conveyance thereof to Mrs. Webb in consideration of her promise and covenant that the Academy should have the remainder after her death, and that, there being complete conveyance of the property by the owner in consideration of the promise of the grantee to convey an estate therein to a third person, the conveyance is in legal effect, so far as concerns such third person, a conveyance in trust, and there was an immediate vesting of the estate, not to be changed by any subsequent agreement between Mr. and Mrs. Webb.

The fundamental question involved in the present controversy relates to the establishment of an irrevocable trust duty imposed upon Mrs. Webb to convey, and we are of the opinion that such trust relationship does not exist. To constitute a trust there must be either an explicit declaration of trust or circumstances which clearly disclose that a trust was intended to be created. If an irrevocable trust which passed title at that time to the Webb Academy was not created, the plaintiff's case necessarily fails, because a new agreement respecting the property could be made. "It would," says the court, in Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531, "introduce a dangerous instability of titles if anything less was required, or if a voluntary trust inter vivos could be established, in the absence of express words, by circumstances capable of another construction or consistent with a different intention." Young v. Young, 80 N. Y. 438, 36 Am. Rep. 634. The terms of the conveyances and contract do not in express language vest the title to the premises in the plaintiff. The learned referee concluded that the contract, inclusive of the deeds, was not an executory contract and within recall by the parties; that an estate was vested in Mrs. Webb, burdened with a trust obligation, which carried an immediate vested right in the plaintiff. Such a consequence was found to be the intention of the parties.

In this conclusion we are unable to agree. Mr. and Mrs. Webb

owed no legal or moral duty to the plaintiff, based upon any legal or equitable consideration. The only possible right of the plaintiff to the property in question depends upon the voluntary act of both Mr. and Mrs. Webb. She merged her right of dower in the conveyance to Hidden at the time the latter made the deed to her; and the question is: Was it the intention of these two persons, all the covenants being upon the part of Mrs. Webb, to establish an irrevocable trust? If it was, why did they not reserve a life estate for themselves and cause the transfer of the property directly to the Academy? This was done in the case of the other property conveyed at the same time. It would have been certain of producing the desired result, if the intention was in fact to make an irrevocable disposition of the property. The practical interpretation of any agreement by the parties to it is always a consideration of great weight in ascertaining what the parties intended. Insurance Co. v. Dutcher, 95 U. S. 269, 24 L. Ed. 410; Sattler v. Hallock, 160 N. Y. 291, 54 N. E. 667, 46 L. R. A. 679, 73 Am. St. Rep. 686. For a period of upwards of 10 years Mr. Webb, during all that time the president and sole supporter of the plaintiff, never told any member of the board of directors or officers of the plaintiff of the existence of this contract through which it now seeks to maintain title to the premises in question. This fact alone, to my mind, is inconsistent with an intention to create an estate for the benefit of the plaintiff. Again, after the expiration of 10 years, and while Mr. Webb was in the possession of his life estate, he and his wife, acting in good faith and within their legal rights, as they interpreted the contract annulled it and substituted therefor a new contract which gave the property to their son. They assumed that the contract in question was an executory contract, and revocable at any time before executed. It is hard to conceive that these people entered into this contract between themselves, keeping it secret from the plaintiff, and finally concurring in a contract of annulment, if they in September, 1889, understood that they were creating an irrevocable trust in favor of the plaintiff. The deed gave the fee of the premises to Mrs. Webb, if she survived her husband. If she predeceased her husband, then it was to go to the plaintiff. The contract merely provided for the transfer of the premises to the plaintiff, upon the death of Mrs. Webb, provided she came into ownership under the deed. The contract must, therefore, have been understood to have been executory during the entire lifetime of Mr. Webb; and as there was no obligation on the part of either of them to give the property to the plaintiff to the exclusion of their son, and the plaintiff not having changed its position in anticipation of coming into possession of the property, there is no reason why a court of equity should be astute to discover an intention where none is expressed, and where the facts and circumstances do not reasonably, if not irresistibly, lead to the disclosed intention to create a trust which should be irrevocable. It seems to us that the fair and reasonable construction of the conduct of the parties is that after the deed was made and delivered they agreed as to what they mutually desired to be done with the property in the event provided for in the contract, and that, as between themselves, they stipulated and agreed that this disposition should be made in the event that

Mrs. Webb survived her husband; and if this event had happened while the contract was yet in force, it is not to be doubted that Mrs. Webb would have complied with its conditions. But before the contract could have any force or effect, and before its contents were known to the plaintiff, the parties thereto, in harmony with their natural right, executed a new contract upon a sufficient consideration, and annulled the pre-existing one. If this does not negative the idea that the parties intended an irrevocable trust, it certainly makes that view as definite and certain as the contrary one; and the rule in such cases prevents the court from holding that a trust has been created.

It is argued by the appellant that this case in principle is analogous to those cases in which persons have made deposits in savings banks, in trust for third parties, the depositors retaining the evidences of the deposits and making no mention of the same to the persons in whose behalf the trusts are nominally made, and where the courts have held that, if the depositors die without revoking the trust, the money is vested in the persons named as beneficiaries, but that during the lifetime of the depositors the beneficiaries have no rights, and the depositors have the power to revoke the trust. In Matter of Totten, 179 N. Y. 112, 71 N. E. 748, 70 L. R. A. 711, the court reviewed the decisions upon this line of cases and lays down the proposition that:

"A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as a delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary, without revocation or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust is created as to the balance on hand at the death of the depositor."

The argument is not without force, and the principle would seem to apply here. Although there may be no such thing as a tentative trust of real estate, yet there was an obligation, binding upon the conscience of Mrs. Webb, if she came into the possession of the estate while the contract was in existence, to execute the same. That event did not happen. While Mr. and Mrs. Webb were alive, and while the fee of the premises in question and all rights thereunder were vested in them, they had a clear right, as against the plaintiff in this action, to revoke the trust, and to dispose of the property as they might mutually agree; for the determinant fact remains that there never was a delivery of any deed or conveyance passing title to or for the benefit of the plaintiff.

It does not seem necessary to discuss the suggestion that there may have been a power in trust; for if the parties had a right to revoke their contract, and we reached the conclusion that they had and did, there was no more foundation for a power in trust than there was for an irrevocable trust.

The judgment appealed from should be reversed, and a new trial ordered before another referee, with costs to appellants to abide event.

PATTERSON, P. J., and LAUGHLIN and HOUGHTON, JJ., concur.

INGRAHAM, J.   I concur in the reversal of this judgment.   Wil-. liam H. Webb was the owner of this property in question, subject to an inchoate right of dower of his wife.   Mr. and Mrs. Webb made an agreement between themselves as to the disposition of this property, which was evidenced by three instruments, executed simultaneously, and which, I think, in ascertaining the intent of the parties and the rights acquired, must be read together.   The first instrument was a deed conveying the property to Thomas B. Hidden, executed by both husband and wife.   The second instrument was a deed from Thomas B. Hidden, of the first part to William H. Webb, Henrietta A. Webb (his wife), and the Webb Academy and Home for Shipbuilders, parties of the second part.   By this deed the property was conveyed to Wil- H. Webb during his natural life, and upon and after his death unto Henrietta A. Webb, her heirs and assigns, forever, if she then be living, and if the said Henrietta A. Webb shall not survive the said William H. Webb, then upon and after the death of William H. Webb unto the said Webb's Academy and Home for Shipbuilders, its executors and assigns forever.   These two instruments were executed, delivered, and recorded, and thereby William H. Webb acquired an estate for life in the property, with a vested remainder to Mrs. Webb in fee, with a contingent remainder over to the plaintiff in the event that Mrs. Webb did not survive her husband.   The parties had also agreed, as between themselves, what disposition Mrs. Webb should make of the property in case she survived her husband and acquired the fee, and that was evidenced by the third instrument, in which Henrietta A. Webb (wife of William H. Webb) was party of the first part, and William H. Webb was the party of the second part.   By the instrument the party of the first part (Mrs. Webb) agreed to execute a conveyance or will so as to vest the plaintiff with the remainder in the property after her death; and she further covenanted and agreed that this covenant and agreement—

"Is made to and with, and shall inure to the benefit of, the said Webb's Academy and Home for Shipbuilders, its successors and assigns, as well as to and with the party of the second part, his heirs, executors, and administrators, and that the said Webb's Academy and Home for Shipbuilders, its successors and assigns, shall be entitled to enforce the same against the party of the first part, her heirs, executors, administrators, and assigns, as well in equity as at law, and by suit for specific performance as well as by action for damages; and in case the party of the first part shall fail in her lifetime, either by conveyance or by last will and testament, to vest in said Webb's Academy and Home for Shipbuilders the fee simple of said premises, to take effect upon and after her death, then the said Webb's Academy and Home for Shipbuilders shall nevertheless be entitled to the ownership and possession of said premises, and to all remedies against and releases, conveyances, and acquittances by the heirs, executors, administrators, and assigns of the party of the first part, which shall be requisite and proper to vest in and to itself and its successors the title to said premises in fee simple."

This instrument was executed and acknowledged, and was in possession of William H. Webb until he delivered it to his counsel at or about the time of its revocation as hereinafter stated.   Taking this transaction as a whole, and these several instruments designed to carry out the agreement between William H. Webb and his wife as to the disposition of his property together, I think if there had been a delivery

of this agreement, or if there had been any consideration proceeding from the plaintiff, the court would have implied a trust under which Mrs. Webb held the property in trust for the plaintiff; but William H. Webb and his wife, the parties to the agreement and the parties to the instrument evidencing it, retained possession of it, and it was never delivered to the plaintiffs.

It will be noticed that all through this instrument there is no word of present gift or transfer, and I can find no intention to vest any present interest in the plaintiff, either in possession or remainder, in the property in question. Mrs. Webb makes no declaration that she will stand seised of the property for the benefit of the plaintiff, or held the property for its benefit; and clearly the covenants in the instrument between Mr. Webb and his wife could not be enforced by the plaintiff, there being no consideration passing from the plaintiff, and the plaintiff not being a party to the instrument. There was plainly an agreement between these owning the property and having an absolute right to it by which they agreed as between themselves that there should be a gift of the property to the plaintiff after Mrs. Webb's death. The plaintiff, however, acquired no present interest in the property and no present right to enforce the agreement. I suppose it could hardly be claimed that if the plaintiff had acquired knowledge of the execution of this instrument by Mr. and Mrs. Webb during Mr. Webb's lifetime, and had filed a bill to compel Mrs. Webb to execute a declaration of trust in its favor, such an action could not be maintained; and yet, as I view it, to sustain this judgment the plaintiff must have acquired a present interest in or title to the property which inured to it upon the execution of the instrument. Whatever title or interest the plaintiff acquired in or to the property must have been acquired upon the execution of the instrument. This instrument remained in the possession of Mr. Webb until the month of October, 1899, when he gave it to his counsel, who had retained it from that time to the present. On October 3, 1899, Mr. and Mrs. Webb executed an agreement reciting these conveyances, and also reciting that in pursuance to the agreements and arrangements under which they were executed Mrs. Webb had entered into an agreement with Mr. Webb, dated the 26th day of September, 1889, whereby she agreed that she would vest in the plaintiff the fee simple of the premises, subject to an estate in her for life; and "whereas, for various reasons the parties hereto have become dissatisfied with the said agreement and the disposition thereby agreed to be made of said premises, and are desirous of canceling said agreement and making a new disposition of said premises, and the party of the first part (Mrs. Webb) has agreed, in consideration that she shall be released from said agreement and all obligation and liability thereunder, that she will enter into a new agreement pursuant to the original understanding and arrangement upon which said premises were conveyed to her, and providing that, in case she shall survive the party of the second part (Mr. Webb) and the title to said premises shall become vested in her, she will forthwith devise or convey the said premises in fee to William E. Webb, the son of the parties hereto, subject to an estate in her for life"; and it is then agreed that the parties cancel and annul the said

agreement bearing date the 26th day of September, 1889, "and all covenants and agreements and provisions therein contained, and all obligations and liability thereunder or arising therefrom," and that Mrs. Webb agreed to convey the premises to her son in pursuance of the agreement entered into between them. Whatever part of the agreement of September 26, 1889, was executory, was therefore canceled and released by this new indenture of the 3d of October, 1899, and whatever Mr. Webb, who had been the owner of the property and with whom the covenant as to the conveyance to the plaintiff was made, could do to release Mrs. Webb from any obligation that she assumed under the contract, was done. Consequently, unless the plaintiff had acquired some interest in the property that a court of equity would enforce, there was nothing left of the agreement which was enforceable.

An essential part of the due execution of an instrument granting or conveying an interest in land is delivery, and such an instrument never takes effect until delivery; and treating all these instruments as one instrument by which Mr. Webb intended to convey his land so that he would be entitled to retain a life estate, with remainder to his wife, and remainder over to the plaintiff, his retention of the instrument was not a delivery which would vest the plaintiff with any interest in the land; and, as I view it, the agreement being without consideration, so far as the plaintiff was concerned, it could vest no present title in the plaintiff until a delivery. There being no declaration of trust, or words that would act as a present limitation of Mrs. Webb's estate in remainder, which had vested in her by the execution of the deed from Hidden to her, I cannot see that there was any estate in the land to which the plaintiff was entitled, or any contract or declaration of trust which a court of equity could enforce. The agreement that the plaintiff seeks to enforce was a voluntary agreement by which the plaintiff was to be entitled to this land upon the death of Mrs. Webb. The agreement never was delivered to the plaintiff, or any one for its benefit. There was no consideration. No title or interest, either as grantee or as cestui que trust, ever vested in the plaintiff, and the parties to the agreement, before it had ever become an executed agreement, so far as the plaintiff was concerned, revoked and canceled it and made other disposition of the property.

It seems to me to follow that there could be no enforcement of this agreement in equity, and that the defendants were entitled to judgment.